**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| NELSON FONDUNGALLA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 25-cv-01258-LKG |
| v. ) | |
| ) | Dated:  March 20, 2026 |
| MONTGOMERY COUNTY, *et al.*, ) | |
| ) | |
| Defendants. ) | |

<u>**MEMORANDUM OPINION**</u>

## I.   INTRODUCTION

In this civil action, the Plaintiff, Nelson Fondungalla, brings claims under the Family Medical Leave Act (the "FMLA"), 29 U.S.C. § 2615, *et seq.*, Section 1981, 42 U.S.C. § 1981, *et seq.*, and Section 1983, 42 U.S.C. § 1983, *et seq.*, against the Defendants, Montgomery County, Maryland (the "County"), Frederick Abello, Ben Stevenson, Angela Talley and Bernard Wade (collectively, the "Individual Defendants"), arising from the denial of the Plaintiff's promotion to the position of sergeant.  *See generally* ECF No. 1.  The Defendants have moved to dismiss the complaint, pursuant to Fed. R. Civ. P. 12(b)(6).  ECF Nos. 18 and 18-1.  The Defendants' motion to dismiss is fully briefed.  ECF Nos. 18, 18-1, 21 and 23.  No hearing is necessary to resolve the motion.  *See* L.R. 105.6 (D. Md. 2025).  For the reasons that follow, the Court: (1) **GRANTS** the Defendants' motion to dismiss (ECF No. 18) and (2) **DISMISSES** the complaint.

## II.    FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.  Factual Background

In this civil action, the Plaintiff brings claims under the FMLA*,* Section 1981 and Section 1983 against the Defendants, arising from the denial of the Plaintiff's promotion to the position of sergeant.  *See generally* ECF No. 1.  In the complaint, the Plaintiff asserts the following claims: (1) FMLA retaliation against Montgomery County (Count I); (2) Section 1981-national

---

[1] The facts recited in this memorandum opinion are taken from the complaint, the Defendants' motion to dismiss and memorandum in support thereof, and the Plaintiff's response in opposition to the Defendants' motion to dismiss.  ECF Nos. 1, 18, 18-1 and 21.

origin discrimination against the Individual Defendants (Count II); and (3) Section 1983-national origin discrimination against the Individual Defendants (Count III). *Id*. at ¶¶ 47–78. As relief, the Plaintiff seeks, among other things, certain equitable relief and to recover monetary damages, attorney's fees and costs from the Defendants. *Id*. at Prayer for Relief.

<u>The Parties</u>

Plaintiff Nelson Fondungalla identifies as an African American male of Cameroonian national origin. *Id.* at ¶ 11.

Defendant Montgomery County is a county in the State of Maryland and the Plaintiff's employer. *Id.* at ¶¶ 12–17.

Defendant Fredrick Abello is a resident of the State of Maryland. *Id.* at ¶ 3.

Defendant Ben Stevenson is a resident of the State of Maryland. *Id.* at ¶ 4.

Defendant Angela Talley is a resident of the State of Maryland. *Id.* at ¶ 5.

Defendant Bernard Wade is a resident of the State of Maryland. *Id.* at ¶ 6.

<u>The Plaintiff's Employment History</u>

As background, in or around January of 2024, the County hired the Plaintiff as a correctional officer. *Id.* at ¶ 12. In 2015, the County promoted the Plaintiff to the position of Correctional Officer II, after he completed a probationary period, graduated from an academy program, and passed a correctional officer exam. *Id.* at ¶ 14. In 2016, the Plaintiff became certified in shotgun, CPR, and first aid, and he passed another board exam. *Id.* at ¶ 15.

The Plaintiff alleges that he received pay increases for cost-of-living adjustments and non-competitive promotions during the period 2016 to 2024. *Id.* at ¶ 16. The Plaintiff is currently employed by the County as a Correctional Officer III at the Montgomery County Detention Center ("MCDC") located in Rockville, Maryland, and his base pay is $96,556.00. *Id.* at ¶¶ 17–18.

The Plaintiff alleges that, on or about June 30, 2022, the County mistakenly released an inmate from the MCDC, in a so-called "bad release." *Id.* at ¶ 20. The Plaintiff also alleges that he was responsible for walking the inmate in question from the hearing area to the hallway officer during the bad release, and that he was also responsible for handing off the paperwork accompanying the inmate to the hallway officer. *Id.* at ¶ 21.

In this regard, the Plaintiff alleges that the MCDC determined that the inmate in question had been improperly released after he left the facility, but the MCDC did not hold the Plaintiff

responsible for the bad release. *Id.* at ¶ 23. The Plaintiff also alleges that the officers directly responsible for the bad release were instructed to fill out a report, but he was not asked to do so. *Id.*

The Plaintiff alleges that Defendant Captain Bernard Wade conducted the investigation into the bad release and that Captain Wade interviewed him about the bad release on or around August 22, 2022. *Id.* at ¶¶ 24–25. The Plaintiff also alleges that Captain Wade failed to adequately investigate his involvement in the bad release and the Plaintiff maintains that he properly performed his duties during the bad release. *Id.* at ¶ 26.

On or around September 28, 2022, Warden Susan Malagari issued a statement of charges to the Plaintiff, alleging that he neglected to retrieve paperwork from the commissioner in connection with the bad release. *Id.* at ¶ 27. The Plaintiff alleges that he received the statement of charges on or about October 12, 2022, and that he had until October 26, 2022, to appeal the statement of charges. *Id.* at ¶ 28. After learning that Captain Wade would soon assume the acting warden position at the MCDC, the Plaintiff mailed his response to the statement of charges to the then-acting Warden, Shelford Gilliam, on or about October 25, 2022. *Id.* at ¶ 29.

The Plaintiff alleges that acting Warden Gilliam retired before responding to his appeal of the statement of charges. *Id.* at ¶ 30. And so, the Plaintiff maintains that the MCDC erroneously claimed that he did not appeal the statement of charges. *Id.*

On January 13, 2023, the Director of the Department of Correction and Rehabilitation, Defendant Angela Talley, issued a notice of disciplinary action and a written reprimand to the Plaintiff. *Id.* at ¶ 31. In this regard, the Plaintiff alleges that the County told him that the written reprimand would remain in his personnel file for one year. *Id.* In addition, in 2023, the Plaintiff requested and used 33 days of FMLA leave to care for his son and his own medical needs. *Id.* at ¶ 32.

## The Plaintiff's Non-Promotion

The Plaintiff alleges that, in or about 2023, the MCDC announced promotions to the position of sergeant. *Id.* In this regard, the Plaintiff alleges that he met with Defendant Warden Frederick Abello in or around September of 2023, and the Plaintiff told Warden Abello that he did not want to be skipped over for a promotion. *Id.* at ¶ 33. But the Plaintiff alleges that, within a few days thereafter, Warden Abello skipped him and promoted another individual

3

who was behind the Plaintiff on the promotion list to the position of sergeant. *Id.* The Plaintiff also alleges that the promoted individual was Caucasian. *Id.*

The Plaintiff further alleges that he asked the secretary-treasurer of his union, L. Wilsonia Blackwell-Brown, to set up a meeting with the MCDC Director, Defendant Ben Stevenson, regarding his non-promotion. *Id.* at ¶ 34. But this meeting did not occur. *Id.* The Plaintiff alleges that Ms. Blackwell-Brown told him that she had already reported Warden Abello's decision not to promote him to Director Ben Stevenson. *Id.* at ¶ 35.

The Plaintiff alleges that Ms. Blackwell-Brown met with Warden Abello, in or around December of 2023, and that Warden Abello told her in an email dated on or about December 21, 2023, that the Plaintiff's 71 missed days of work in 2023 were one of the reasons for his non-promotion. *Id.* at ¶ 39. The Plaintiff alleges that 33 of his 71 missed days of work were for FMLA leave. *Id.* The Plaintiff alleges that Ms. Blackwell-Brown told him that Warden Abello claimed that he did not want to promote him, because the Plaintiff had missed 71 days of work in 2023, and the department was not hiring more sergeants. *Id.* at ¶ 40.

Lastly, the Plaintiff alleges that correctional officer Martin Che emailed Warden Abello and Director Stevenson on behalf of the Plaintiff and his colleagues of national origin from African countries, on or about September 29, 2024, and stated that he and the group of African correctional officers at the MCDC thought that the department discriminated against Africans, when it refused to promote correctional officers of African origin to sergeant and intentionally let the promotional list expire. *Id.* at ¶ 41. In this regard, the Plaintiff alleges that Warden Abello insisted that he could not discriminate against officers of African origin because he was African American. *Id.* at ¶ 42. The Plaintiff maintains that Warden Abello told Mr. Che that he would recommend him for the position of acting sergeant, even though Mr. Che applied for the competitive acting position late. *Id.* at ¶ 43. And so, the Plaintiff maintains that Mr. Che was promoted to acting sergeant after this meeting, and, thereafter, Mr. Che stopped complaining of discriminatory treatment and stopped organizing the African correctional officers to complain of discriminatory treatment. *Id.*

The Plaintiff's EEOC Complaint

On or around January 30, 2025, the Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Montgomery County Office of

Human Rights, alleging discrimination based on color, genetic information, national origin and race. *Id.* at ¶ 45.

The Plaintiff's Allegations

In the complaint, the Plaintiff asserts claims for: (1) FMLA retaliation against Montgomery County (Count I); (2) Section 1981-national origin discrimination against the Individual Defendants (Count II); and (3) Section 1983-national origin discrimination against the Individual Defendants (Count III). *See generally* ECF No. 1. With regards to his FMLA retaliation claim, the Plaintiff alleges that he engaged in protected activity in 2023, by taking FMLA leave, the County adversely acted by denying the Plaintiff a promotion to sergeant in September 2023, and a casual connection exits between his protected activity and non-promotion, because his supervisor stated that "one reason why [he] was not promoted was because he took [sic] 77 days of leave in 2023, 33 of which were FMLA leave days." *Id*. at ¶¶ 51–53.

In Count II of the complaint, the Plaintiff alleges that the Individual Defendants discriminated against him on the basis of national origin in violation of Section 1981, by failing to promote him in September of 2023, issuing him a notice of disciplinary action on June 30, 2022, and failing to adequately investigate his involvement in the June 2022 bad release, resulting a written reprimand. *Id*. at ¶¶ 57–61.

Lastly, in Count III of the complaint, the Plaintiff alleges that the Individual Defendants discriminated against him in violation of section 1983, because he is of Cameroonian national origin, by failing to promote him in September of 2023. *Id*. at ¶¶ 70–75.

The Plaintiff contends that the Defendants' conduct has caused him to suffer monetary damages and mental anguish. *Id*. at ¶ 46. And so, the Plaintiff seeks certain equitable relief and to recover monetary damages, attorney's fees and costs from the Defendants. *Id*. at Prayer for Relief.

**B.   Relevant Procedural Background**

The Plaintiff commenced this civil action on April 17, 2025. ECF No. 1. On June 30, 2025, the Defendants filed a motion to dismiss the complaint, pursuant to Fed. R. Civ. P. 12(b)(6), and a memorandum in support thereof. ECF Nos. 18 and 18-1.

On July 14, 2025, the Plaintiff filed response in opposition to the Defendants' motion to dismiss. ECF No. 21. On August 29, 2025, the Plaintiff filed a reply brief. ECF No. 23.

The Defendants' motion to dismiss having been fully briefed, the Court resolves the pending motion.

## III.    LEGAL STANDARDS

### A.  Fed. R. Civ. P. 8(a) And 12(b)(6)

Under Fed. R. Civ. P. 8(a), a complaint must set forth a short and plain statement of the claim showing that the pleader is entitled to relief.  To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must allege enough facts to state a plausible claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible when "the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  When evaluating the sufficiency of a plaintiff's claims under Fed. R. Civ. P. 12(b)(6), the Court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff.  *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005) (citations omitted).  But, the complaint must contain more than "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement . . . ." *Nemet Chevrolet, Ltd.*, 591 F.3d at 255.  And so, the Court should grant a motion to dismiss for failure to state a claim if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  *GE Inv. Priv. Placement Partners II, L.P. v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 249–50 (1989)).

### B.  Section 1983

Title 42, United States Code, Section 1983 provides a mechanism for individuals who have had their constitutional rights violated to seek a remedy against individual state actors.  *See* 42 U.S.C. § 1983 (providing that if any person acting "under color of any statute, ordinance, regulation, custom, or usage, of any State" deprives a United States citizen of any constitutional right, that person may be liable in a suit for money damages). To state a claim under Section 1983, a plaintiff must allege: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a "person acting under the color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Davison v. Randall*, 912 F.3d 666, 679 (4th Cir. 2019), *as amended* (Jan. 9,

6

2019).  In addition, claims brought under Section 1983 must allege personal involvement of the defendant.  *Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017) ("[L]iability will only lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiffs' rights.") (quoting *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)).  A supervisor may also be liable for the actions of subordinate employees under Section 1983, where the subordinates engage in conduct that poses a "pervasive and unreasonable risk" of constitutional injury and a supervisor's response to such conduct is so inadequate that it shows "deliberate indifference or tacit authorization" of the misconduct such that the defendant's actions can be considered a causal factor of the constitutional injuries.  *See Randall v. Prince George's Cnty., Md.*, 302 F.3d 188, 206 (4th Cir. 2002); *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001).

### C.  Section 1981

Section 1981 provides in part that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws . . . as is enjoyed by white citizens."  42 U.S.C. § 1981(a).  While Section 1981 does not explicitly use the word "race," the Supreme Court has construed the statute to ban all racial discrimination in the making of public and private contracts, including race-based employment discrimination. *See Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 609 (1987) (citing *Runyon v. McCrary*, 427 U.S. 160, 168, 174–75 (1976)); *see also Yashenko v. Harrah's NC Casino Co.*, 446 F.3d 541, 551–52 (4th Cir. 2006).

In this regard, the Fourth Circuit has recognized that the concept of race under Section 1981 "is much broader than our modern understanding of the term" and that "Congress intended to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics." *Nnadozie v. Genesis HealthCare Corp.*, 730 Fed. App'x 151, 156 (quoting *Saint Francis Coll.*, 481 U.S. at 613).  And so, the Fourth Circuit has held that, "with evidence of some nexus between ethnic or ancestral characteristics and workplace discrimination, there is no reason why a plaintiff cannot bring a Section 1981 claim on the basis of being 'African' or 'Nigerian.'" *Id.* at 157.

But the Fourth Circuit has also cautioned that "the scope of Section 1981 protection is not unlimited." *Id.*  Given this, "the line between discrimination based on ancestry or ethnic

7

characteristics and discrimination based on place or nation of . . . origin is not a bright one." *Id*. (quoting *Saint Francis Coll.*, 481 U.S. at 614 (Brennan, J. concurring) (internal quotation marks and citations omitted)).  And so, at the very least, a Section 1981 claim must allege race-based discrimination and allegations of discrimination based purely on national origin are insufficient to state a Section 1981 claim.  *Id*.

### D.  FMLA Retaliation Claims

Lastly, the Family Medical Leave Act allows eligible employees to take "12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee."  29 U.S.C. § 2612(a)(1).  Claims can be brought under the FMLA for either interference with an entitlement to FMLA leave, or retaliation for exercising the right to FMLA leave.  29 U.S.C. § 2615(a).  The FMLA also provides that "[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter."  *Id.* at § 2615(a)(2).  A claim of retaliatory discharge under the FMLA is analyzed under the same burden-shifting framework that applies to retaliatory discharge claims brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17.  *Adams v. Anne Arundel Cnty. Pub. Schs.*, 789 F.3d 422, 429 (4th Cir. 2015).  And so, an employee claiming FMLA retaliation must make a *prima facie* showing that: (1) he engaged in protected activity; (2) the employer took adverse action against him; and (3) the adverse action was causally connected to his protected activity.  *Yashenko*, 446 F.3d at 551; *see also Sharif v. United Airlines, Inc.*, 841 F.3d 199, 203 (4th Cir. 2016) (same).

Because a FMLA retaliation claim is "proscriptive," "employer intent . . . is relevant." *Sharif*, 841 F.3d at 203.  Such "[i]ntent can be established either by direct evidence of retaliation or through the familiar burden shifting framework articulated in *McDonnel Douglas Corp. v. Green*, 411 U.S. 792, 800–06 (1973)."  *Id.*  In this regard, the Fourth Circuit has held that "[r]etaliation claims . . . require the employee to show that retaliation was a but-for cause of a challenged adverse employment action."  *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 217 (4th Cir. 2016) (internal quotation marks omitted).  The Fourth Circuit has also "explained that, 'for purposes of establishing a prima facie case, close temporal proximity between activity protected by the statute and an adverse employment action may suffice to demonstrate causation.'"  *Clem v. Maryland*, 2022 WL 14912707, at *4 (D. Md. 2022) (quoting *Waag v.*

8

*Sotera Def. Sol., Inc.*, 857 F.3d 179, 192 (4th Cir. 2017)).  If an FMLA plaintiff puts forth "sufficient evidence to establish a *prima facie* case" of retaliation, the employer must offer a satisfactory "some legitimate, nondiscriminatory reason" for the adverse employment action. *Sharif*, 841 F.3d at 203 (emphasis added).  "'In reviewing whether an employer's decision is unlawful, the Court's task is not 'to decide whether the reason [for terminating employment] was wise, fair, or even correct, ultimately, so long as it truly was the reason for [the decision].'" *Clem*, 2022 WL 14912707, at *5 (quoting *Mercer v. Arc of Prince George's Cnty.*, 532 F. App'x 392, 399 (4th Cir. 2013)) (brackets added and in original).  Given this, "[t]o meet its burden of offering a legitimate non-discriminatory reason for the plaintiff's termination, a defendant need only have had an honest belief that the alleged reason or misconduct occurred."  *Id.* (quotation omitted).

A FMLA plaintiff "bears the burden of establishing that the employer's proffered explanation is pretext for FMLA retaliation." *Yashenko*, 446 F.3d at 551 (internal quotation marks omitted); *Sharif*, 814 F.3d at 203.  "A plaintiff may satisfy this burden by showing either that the employer's explanation is not credible, or that the employer's decision was more likely the result of retaliation." *Sharif*, 814 F.3d at 203.  But "a plaintiff's own assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate nondiscriminatory reasons for an adverse employment action." *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 281 (4th Cir. 2000) (quotations and citations omitted).

## IV.    ANALYSIS

The Defendants have moved to dismiss this matter, pursuant to Fed. R. Civ. P. 12(b)(6), for the following three reasons: (1) the Plaintiff fails to state a plausible FMLA retaliation claim, because the allegations in the complaint show that his FMLA leave was not the but-for cause of his non-promotion; (2) the Plaintiff fails to state a plausible Section 1981 claim, because this statute does not provide protection for individuals discriminated against on the basis of national origin and the complaint fails to allege facts to support the elements of a Section 1981 discrimination claim; and (3) the Plaintiff fails to state a plausible Section 1983 claim, because he fails to identify a specific federal right violated by the Defendants.  ECF No. 18-1 at 4–9.  And so, the Defendants request that the Court dismiss the complaint.  *Id.* at 9.

9

In his response in opposition to the Defendants' motion to dismiss, the Plaintiff counters that the Court should not dismiss this matter, because: (1) the complaint contains sufficient factual allegations to state a FMLA retaliation claim; (2) the complaint contains sufficient factual allegations to state a Section 1981 discrimination claim, because such a claim may be based on his African ancestry and he alleges facts to support the elements of a Section 1981 claim; and (3) the complaint contains sufficient factual allegations to state a Section 1983 claim, because the Defendants violated his rights under Montgomery County Personnel Regulations and the Due Process Clause of the Fourteenth Amendment. ECF No. 21 at 6–11. And so, the Plaintiff requests that the Court deny the Defendants' motion to dismiss. *Id.* at 12.

For the reasons that follow, a careful reading of the complaint shows that the Plaintiff fails to state a plausible FMLA retaliation claim, because the factual allegations in the complaint show that his FMLA leave was not the but-for cause of his non-promotion. The complaint also makes clear that the Plaintiff cannot prevail on his Section 1981 discrimination claim based on national origin, because he alleges discrimination based purely on his Cameroonian national origin. Lastly, the Plaintiff fails to state a plausible Section 1983 claim, because he does not identify a specific federal right violated by the Defendants in the complaint. And so, the Court: (1) GRANTS the Defendants' motion to dismiss (ECF No. 18) and (2) DISMISSES the complaint.

### A.  The Plaintiff Fails To State A FMLA Retaliation Claim

As an initial matter, the Defendants argue with persuasion that the Court should dismiss the Plaintiff's FMLA retaliation claim against the County, in Count I of the complaint, because the Plaintiff fails to allege facts to show that his FMLA leave was the but-for cause of his non-promotion. To state a FMLA retaliation claim, the Plaintiff must allege facts to show that: (1) he engaged in protected activity; (2) the County took adverse action against him; and (3) the adverse action was causally connected to his protected activity. *Yashenko v. Harrah's N.C. Casino Co.*, 446 F.3d 541, 551 (4th Cir. 2006); *see also Sharif v. United Airlines, Inc.*, 841 F.3d 199, 203 (4th Cir. 2016) (same). With regards to the causal connection element of this claim, the Fourth Circuit has held that "[r]etaliation claims . . . require the employee to show that retaliation was a but-for cause of a challenged adverse employment action." *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 217 (4th Cir. 2016) (internal quotation marks omitted). And so, the

10

Plaintiff "bears the burden of establishing that the alleged retaliation 'would not have occurred in the absence of the alleged wrongful action or actions of the employer.'" *Perry v. Maryland*, No. 17-3619, 2019 WL 2177349, at *8 (D. Md. May 17, 2019) (citing *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)). "[A] plaintiff making a retaliation claim under [Title VII] must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Perry*, 2019 WL 2177349, at *10 (quoting *Nassar*, 570 U.S. at 362) (brackets in original).

In the complaint, the Plaintiff alleges that the Defendants denied his promotion to the position of sergeant, because: (1) he missed 71 days of work (33 of which were FMLA leave days); (2) the department was not hiring more sergeants; and (3) he had a written reprimand. ECF No. 1 at ¶¶ 39, 40 and 62. And so, taken as true, the Plaintiff's factual allegations show that his FMLA leave was one of several reasons that he did not receive a promotion. The Plaintiff argues that his FMLA leave need not necessarily be the only reason that he was denied a promotion, to establish that FMLA leave was the but-for cause of his non-promotion. ECF No. 21 at 7–8. But the Plaintiff must still show that the Defendants "took the adverse action '*because* [he] engaged in a protected activity.'" *Perry*, 2019 WL 2177349, at *10 (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998)) (emphasis in original).

The factual allegations in the complaint belie such a claim here, because the Plaintiff acknowledges that there were several other reasons for his non-promotion, beyond the 33 days that he took FMLA leave. The Defendants also correctly observe that the factual allegations in the complaint are insufficient to determine when the Plaintiff took FMLA leave and how close in time such leave was to his non-promotion. *See generally* ECF No. 1 (lacking factual allegations to show when the Plaintiff made his FMLA request, the dates of his FMLA leave, and the dates of his non-FMLA leave.).

Given this, the complaint lacks sufficient factual allegations to show that the Plaintiff's FMLA leave is causally connected to his non-promotion. And so, the Court DISMISSES the Plaintiff's FMLA leave claim in Count I of the complaint.

### B.  The Plaintiff Fails To State A Section 1981 Claim

While a somewhat close question, the Court also agrees with the Defendants that the Plaintiff fails to state a plausible Section 1981 discrimination claim against the Individual

11

Defendants, in Count II of the complaint.  The Supreme Court has construed Section 1981 to ban all racial discrimination in the making of public and private contracts, including race-based employment discrimination.  *See Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 609 (1987); *see also Yashenko*, 446 F.3d at 551–52 (4th Cir. 2006).  The Fourth Circuit has also recognized that the concept of race under Section 1981 "is much broader than our modern understanding of the term" and that "Congress intended to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics."  *Nnadozie v. Genesis HealthCare Corp.*, 730 F. App'x 151, 156 (quoting *Saint Francis Coll.*, 481 U.S. at 613).  And so, the Fourth Circuit has held that, "with evidence of some nexus between ethnic or ancestral characteristics and workplace discrimination, there is no reason why a plaintiff cannot bring a Section 1981 claim on the basis of being 'African' or 'Nigerian.'"  *Id.* at 157.

But "the line between discrimination based on ancestry or ethnic characteristics and discrimination based on place or nation of . . . origin is not a bright one."  *Id*. (quoting *Saint Francis Coll.*, 481 U.S. at 614 (Brennan, J. concurring) (internal quotation marks and citations omitted)).  And so, at the very least, a Section 1981 claim must allege race-based discrimination and allegations of discrimination based purely on national origin are insufficient to state a Section 1981 claim.  *Id.*

In this case, the complaint makes clear that the Plaintiff asserts a Section 1981 claim against the Individual Defendants that is based purely on his Cameroonian national origin. Notably, the Plaintiff alleges in the complaint that he is an African American male of Cameroonian national origin.  ECF No. 1 at ¶ 11. The Plaintiff also alleges that the Individual Defendants discriminated against him on the basis of national origin, by failing to promote him in September of 2023, issuing him a notice of disciplinary action on June 30, 2022, and failing to adequately investigate his involvement in the June 2022 bad release, resulting a written reprimand.  *Id*. at ¶¶ 57–61.

The Plaintiff correctly argues that he may be able to pursue a Section 1981 discrimination claim based on his African ancestry and ethnicity.  In this regard, the Plaintiff alleges in the complaint that correctional officer Martin Che emailed Warden Abello and Director Stevenson on behalf of the Plaintiff and his colleagues of national origin from African countries, on or about September 29, 2024, and stated that he and the group of African

12

correctional officers at the MCDC thought that the department discriminated against Africans, when it refused to promote correctional officers of African origin to sergeant and intentionally let the promotional list expire.  *Id.* at ¶ 41.  But the Plaintiff also alleges that Mr. Che was promoted to acting sergeant after this meeting.  *Id.*  Given this, the complaint appears to acknowledge that the discrimination at issue in this case is based on the Plaintiff's Cameroonian national origin, rather than his ancestry.

Because the complaint makes clear that the Plaintiff's Section 1981 claim is purely based upon his Cameroonian origin, rather than his ancestry, the Plaintiff's claim is not plausible.  *Duane v. Gov't Emps. Ins. Co.*, 784 F. Supp. 1209, 1216 (D. Md. 1992), *aff'd sub nom. Duane v. GEICO*, 37 F.3d 1036 (4th Cir. 1994).  And so, the Court also DISMISSES the Plaintiff's Section 1981 claim in Count II of the complaint.  Fed. R. Civ. P. 12(b)(6).[2]

### C.  The Plaintiff Fails To State A Section 1983 Claim

As a final matter, the complaint makes clear that the Plaintiff's Section 1983 claim against the Individual Defendants, in Count III of the complaint, is also problematic.  To state a claim under Section 1983, the Plaintiff must allege: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a "person acting under the color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Davison v. Randall*, 912 F.3d 666, 679 (4th Cir. 2019), *as amended* (Jan. 9, 2019).  But the Plaintiff alleges no facts in the complaint to identify the federal right that the Individual Defendants violated in this case.  *See generally* ECF No. 1; *see also Gaines v. Balt. Police Dep't*, 657 F. Supp. 3d 708, 748 (D. Md. 2023) ("The first step in [a §1983] claim is to pinpoint the specific right that has been infringed." (quoting *Safar v. Tingle*, 859 F.3d 241, 245 (4th Cir. 2017) (quotations omitted)).

While the Plaintiff argues in his response in opposition to the Defendants' motion that he can show that the Defendants violated Montgomery County Personnel Regulations and the Fourteenth Amendment, these allegations do not appear in the complaint.  *Compare* ECF No. 1, *with* ECF No. 21 at 11–12.  Given this, the Plaintiff fails to state a plausible

---

[2] Because the Court concludes that the Plaintiff cannot pursue his national origin discrimination claim under Section 1981, the Court does not reach the other arguments raised by the Defendants regarding this claim.

Section 1983 claim in this case.  And so, the Court also DISMISES this claim.  Fed. R. Civ. P. 12(b)(6).

## V.   CONCLUSION

For the foregoing reasons, the Court:

(1) **GRANTS** the Defendants' motion to dismiss (ECF No. 18); and

(2) **DISMISSES** the complaint.

A separate Order has issued (ECF No. 26).

**IT IS SO ORDERED.**

s/ Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge

14